1
2
3
4
5
6
7
8
9
10
11
12
13
14

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BRANCH BANKING AND TRUST
COMPANY,

                Plaintiff(s),

v.

PAHRUMP 194, LLC, et al.,

                Defendant(s).

2:12-CV-1462 JCM (VCF)

15

**ORDER**

16    Presently before the court are plaintiff's motions for summary judgment (doc. # 28) and for

17  a deficiency hearing (doc. # 29).  Defendants have responded (doc. # 35) and plaintiff has replied

18  (doc. # 40).

19    Also before the court is defendants' motion for partial summary judgment.  (Doc. # 34).

20  Plaintiff has responded (doc. # 39) and defendants have replied (doc. # 41).

21  **I.    Background**

22    Plaintiff Branch Banking is the successor in interest to non-party Colonial Bank by

23  acquisition of assets from the FDIC as receiver for the bank.

24    Branch Banking's claims arise out of a September 30, 2005, promissory note secured by a

25  deed of trust executed by defendant Pahrump 194, LLC, ("Pahrump 194").  The note secured a loan

26  from Colonial Bank in the original principal amount of $13,650,000.  The deed of trust encumbered

27  real property referred to as Nye County assessor's parcel numbers 35-041-25, 35-041-37, 35-041-39,

28

James C. Mahan
U.S. District Judge

35-041-63, 35-041-67, and 35-041-68 ("the property").  The individual and corporate defendants executed guaranties, promising to repay the present and future indebtedness of Pahrump 194.[1]

On May 8, 2007, the note was amended to increase the principal to $14,556,779 and the maturity date was extended to April 11, 2008.  The note was then amended an additional three times to extend the final maturity date to May 1, 2009.

On August 14, 2009, Colonial Bank was closed and the FDIC was named as receiver.  That same day, the FDIC assigned all of its rights, title, and interest in, to, and under the loan documents to Branch Banking.

On August 9, 2011, Branch Banking served a demand letter upon Pahrump 194 and the individual guarantors.  Pahrump 194 and the guarantors failed to pay the balance due.

On February 29, 2012, a trustee's sale was held, and the property was sold to non-party Pahrump Town Square, LLC, for a cash bid in the amount of $2,640,001 in partial satisfaction of the note.  According to Branch Banking, the principal balance remaining under the note is $14,556,779, with accrued interest at the time of filing in the amount of $2,151,168.47, for a total of $16,707,947.47.

The complaint asserts claims for breach of guaranty, breach of the covenant of good faith and fair dealing, and seeks a deficiency judgment.

**II.   Legal standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

---

[1]  The defendant-guarantors are Todd Nigro, Michael Nigro, Margaret Nigro, Nigro Infinity Plus, LLC, Infinity Plus, LLC, and Nigro Development, LLC.  The remaining defendant, Julie Koentopp, has filed a chapter 7 bankruptcy petition.  Plaintiff has indicated that, as of the time of filing of the instant motion, no discharge has been entered and the automatic stay therefore remains in effect. Accordingly, the instant motions do not seek relief against Koentopp.

James C. Mahan
U.S. District Judge

- 2 -

1    In determining summary judgment, a court applies a burden-shifting analysis.  "When the

2  party moving for summary judgment would bear the burden of proof at trial, it must come forward

3  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

4  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

5  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

6  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

7    In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

8  moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential

9  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

10  make a showing sufficient to establish an element essential to that party's case on which that party

11  will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party

12  fails to meet its initial burden, summary judgment must be denied and the court need not consider

13  the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

14    If the moving party satisfies its initial burden, the burden then shifts to the opposing party

15  to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith

16  Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

17  party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

18  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

19  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

20  Cir. 1987).

21    In other words, the nonmoving party cannot avoid summary judgment by relying solely on

22  conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045

23  (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

24  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

25  for trial.  *See Celotex Corp.*, 477 U.S. at 324.

26    At summary judgment, a court's function is not to weigh the evidence and determine the

27  truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,

28

James C. Mahan
U.S. District Judge

- 3 -

1   477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable

2   inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is

3   merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at

4   249–50.

5   **III.   Discussion**

6          Following a trustee's sale, Nevada law entitles a creditor to a deficiency judgment "if it

7   appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a

8   deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the

9   beneficiary of the deed of trust, respectively."  NRS 40.455(1).  This statutory scheme also requires

10   that the court, prior to awarding a deficiency judgment, hold a hearing regarding the fair market

11   value of the property as of the date of the trustee's sale.  NRS 40.457(1).

12          Following the hearing, the court must award a judgment for the lowest amount amongst the

13   following calculations:

14          (a) the amount by which the amount of indebtedness which was secured exceeds
            the fair market value of the property sold at the time of the sale, with interest
15          from the date of the sale;

16          (b) the amount which is the difference between the amount for which the
            property was actually sold and the amount of the indebtedness which was
17          secured, with interest from the date of the sale; or

18          (c) if the person seeking the judgment acquired the right to obtain the judgment
            from a person who previously held that right, the amount by which the amount
19          of the consideration paid for that right exceeds the fair market value of the
            property sold at the time of sale or the amount for which the property was
20          actually sold, whichever is greater, with interest from the date of sale and
            reasonable costs.

21

22   *See* NRS 40.459(1)(a)-(c).

23          *(A)      Liability under the loan and guaranty agreements*

24          As a preliminary matter, plaintiff asserts, and defendants do not refute, that the loan

25   documents and guaranty agreements are valid and enforceable contracts, and that defendants failed

26   to pay the agreed-upon amount.  Similarly, defendants do not dispute plaintiff's standing as the

27   legitimate successor-in-interest for the purposes of this loan.

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

Instead, defendants argue that plaintiff has not demonstrated that it suffered damages, and therefore has failed to establish an essential element of its claims. For the reasons discussed below, the court disagrees. As defendants concede, "a plaintiff must establish that it is entitled to some amount of damages, even though the determination of the exact amount of damages may be deferred." (Opposition, doc. # 35 at 3)(citing *Alper v. Stillings*, 80 Nev. 84, 86-87, 389 P.2d 239, 240 (1964)). It is clear plaintiff has been damaged by defendants' breach; the only matter remaining is a determination as to the amount.

As such, summary judgment as to liability is granted in favor of plaintiff, and defendants will be liable for damages in an amount to be computed under NRS 40.459(1).

(B)      *Applicability of NRS 40.459(1)(c)*

The majority of the arguments in the cross-motions for summary judgment focuses on a provision of Nevada law specifically limiting the recovery of parties who acquired the right to obtain a deficiency judgment from a previous holder of the right.

In particular, that subsection provides that "[i]f the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater, with interest from the date of sale and reasonable costs." NRS 40.459(1)(c).

Defendants argue that, because Branch Banking acquired the right to obtain the judgment from the FDIC, NRS 40.459(1)(c) must apply. Thus according to defendants, Branch Banking must supply sufficient evidence demonstrating the amount of consideration paid, which it has not done. Defendants are incorrect. This court has previously examined this precise argument and arrived at the opposite conclusion. *See Branch Banking and Trust Co. v. Desert Canyon Phase II, LLC, et al*, 2:12-CV-1463-JCM-PAL, 2014 WL 2468610 (D. Nev. June 2, 2014).

There, the court considered the application of NRS 40.459(1)(c) to an assignment from the FDIC to Branch Banking that occurred prior to the statute's effective date of June 10, 2011. *Id.* at *3-6 (adopting the analysis and conclusion by Judge Jones in *Eagle SPE NV I, Inc. v. Kiley Ranch*

James C. Mahan
U.S. District Judge

- 5 -

*Communities, et al*, 2014 WL 1199595 (D. Nev. Mar. 24, 2014) and applying it to those facts). The court concluded that the proposed retroactive application of that subsection in such a circumstance would violate the United States Constitution.[2]  In particular, the court summarized its findings as follows:

> The Nevada Supreme Court did not have occasion in *Sandpointe Apts., LLC, v. Eight Jud. Dist. Ct., et al*, 313 P.3d 849 (Nev. 2013) to address NRS 40.459(1)(c) in the precise context as is presented here, in particular, whether it applies retroactively to assignments made pre-enactment.  Thus, the court can conclude, without offending *Sandpointe*, that subsection (1)(c) does not apply to this situation because, if it did, it would offend the Contract Clause, and likely the Due Process Clause.  Moreover, the statute may be interpreted in a manner which saves it from constitutional infirmity while still accurately reflecting the legislature's intent in enacting the statute, i.e., removing the incentive for banks to sell these loans at discounts to collection agencies rather than engaging in negotiations with the homeowner.

*Branch Banking and Trust Co. v. Desert Canyon Phase II, LLC, et al*, 2:12-CV-1463-JCM-PAL, 2014 WL 2468610, *4 (D. Nev. June 2, 2014)(internal citations omitted).

The instant scenario is exactly the same.  The court stands by its previous ruling and finds no reason to depart.[3]

Because Branch Banking in this instance obtained the rights under the loan documents from the FDIC in August of 2009, NRS 40.459(1)(c) does not apply.  Accordingly, the parties' arguments regarding the amount paid in consideration of the loan and the sufficiency of the evidence in support thereof are moot and need not be resolved.

(C)   *Shared loss agreement as an "insurance policy" under NRS 40.459(2)*

Defendants argue in the alternative that, if a deficiency exists, it must be reduced pursuant to the shared loss agreement between Branch Banking and the FDIC, which defendants argue qualifies as an "insurance policy" under the statute.

That particular subsection limits the amount a creditor can recover in a deficiency judgment

---

[2]  The court also expressed doubt that the FDIC qualifies as a "person" under the statute as an initial matter. *See id.* at *3-4.

[3]  The court recognizes that the instant motion was briefed before a ruling in the *Desert Canyon Phase II* case was issued.

by providing that "the 'amount of the indebtedness' does not include any amount received by, or payable to, the judgment creditor or beneficiary of the deed of trust pursuant to an insurance policy to compensate the judgment creditor or beneficiary for any losses incurred with respect to the property or the default on the debt." NRS 40.459(2).

As with the retroactive application of subsection (1)(c), this court has already examined this issue and concluded that the loss sharing agreement does not qualify as an insurance policy and that, if it did, it would be pre-empted by federal law. *See Branch Banking and Trust Co. v. Frank*, 2:11-cv-1366-JCM-CWH, 2013 WL 5428112 (D. Nev. Sept. 26, 2013)("[E]ven if the Nevada legislature intended for [NRS 40.459(2)] to apply to terms such as the loss-sharing agreement, its application would be barred under the doctrine of pre-emption, as it would serve as an obstacle to the intent of Congress expressed in the laws governing the FDIC."); *Branch Banking and Trust Co. v. Desert Canyon Phase II, LLC, et al*, 2:12-CV-1463-JCM-PAL, 2014 WL 2468610 (D. Nev. June 2, 2014).

The court stands by its prior rulings and again concludes that NRS 40.459(2) does not apply to a loss sharing agreement with the FDIC.

**IV.     Conclusion**

The court finds that plaintiff has provided sufficient evidence to establish all essential elements of its claim.   However, the court recognizes that it may not make a ruling regarding the fair market value at the time of the trustee's sale prior to holding a hearing under NRS 40.457(1). *Am. Gen. Fin. Corp. v. First Commercial Title, Inc*., 524 P.2d 1270, 1271 (1974).   Therefore plaintiff's motion for summary judgment will be granted except as to the issue of fair market value at the time of sale.

In addition, the court finds that NRS 40.459(1)(c) does not apply retroactively to these facts. As a result, the deficiency amount will be determined as calculated under only NRS 40.459(1)(a) and (b).   That amount will not be reduced by any amount paid out under a loss share agreement between plaintiff and the FDIC.

Though NRS 40.457(2) allows the court to appoint an appraiser, the court is within its discretion to decline to do so and instead require the parties themselves to submit sufficient evidence

James C. Mahan
U.S. District Judge

1   on the issue.  *See Unruh v. Streight*, 615 P.2d 247, 249 (1980).  The court declines to appoint an

2   appraiser at this time.

3        Accordingly,

4        IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for

5   summary judgment (doc. # 28) be, and the same hereby is, GRANTED as to all issues except the fair

6   market value of the property at the time of the trustee's sale.

7        IT IS FURTHER ORDERED that plaintiff's motion for a deficiency hearing (doc. # 29) be,

8   and the same hereby is, GRANTED to the extent it requests a valuation hearing.

9        IT IS FURTHER ORDERED that defendants' motion for partial summary judgment (doc. #

10   34) be, and the same hereby is, DENIED.

11        IT IS FURTHER ORDERED that the parties shall have thirty (30) days from entry of this

12   order to file opening briefs of not more than ten (10) pages concerning the fair market value of the

13   property at issue at the time of the trustee's sale.  The parties shall then have ten (10) days after the

14   filing of opening briefs to file response briefs of not more than five (5) pages. Thereafter, the court

15   will set a fair market valuation hearing pursuant to NRS 40.457(1).

16        DATED July 30, 2014.

17

18   _____

19        UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 8 -