**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

BRANCH BANKING & TRUST COMPANY,

        Plaintiff,

vs.

PAHRUMP 194, *et al.*,

        Defendants.

Case No. 2:12–cv–1462–JCM–VCF

**ORDER AND**
**REPORT & RECOMMENDATION**

FAIR MARKET VALUE DETERMINATION
MOTION TO EXCLUDE EXPERT (#89)

        This matter involves Branch Banking & Trust Company's deficiency-judgment action against Pahrump 194, LLC. *See* (Compl. #1 at ¶¶ 39–41).[1] Summary judgment has been entered on all issues except one: the fair market value of the property at the time of the foreclosure sale. *See* (Doc. #50). On July 28, 2015, the court held a deficiency hearing, as required by Nevada Revised Statute § 40.457. Pahrump 194 subsequently moved to exclude Branch Banking & Trust Company's expert report. (Doc. #89). For the reasons stated below, (1) Pahrump 194's Motion to Exclude (#89) is denied and (2) the court recommends finding that the fair market value of the property was $5,867,500.00.

**I. BACKGROUND**

        On September 30, 2005, Pahrump 194, LLC delivered an executed promissory note and deed of trust to Colonial Bank. (Compl. #1 at ¶ 16). The deed of trust was for approximately 200 acres of land and water rights in the rural community of Pahrump, Nevada. The promissory note was in the amount of $13,650,000.00, and was personally guaranteed by Todd Al. Nigro, Julie Koentopp, Michael E. Nigro, and Margaret Nigro executed personal guarantees for the note. (Compl. #1 at ¶ 16, 18).

---

[1] Parenthetical citations refer to the court's docket.

In the following years, the note's principal was increased, the maturity was extended, and additional guarantors were obtained. (*See id*. at ¶¶ 19–24). Then, in 2009, Nevada's real estate market crashed amid the nation's financial crisis. The State Banking Department of the State of Alabama closed Colonial Bank; the Federal Deposit Insurance Corporation became Colonial Bank's receiver; and the FDIC assigned its rights under the Pahrump 194 loan documents to Branch Banking & Trust. (*Id*. at ¶¶ 25–6).

Meanwhile, the loan's maturity date elapsed and the borrowers were in arrears. (*Id*. at ¶¶ 27–34). Branch Banking & Trust foreclosed and sold the property for $2,640,001.00 on February 29, 2012; but a deficiency remained. (*Id*. at ¶¶ 34, 37). On August 17, 2012, Branch Banking & Trust commenced this action against Pahrump 194, LLC and its guarantors for $13,407,947.47 that remains due on the note following the foreclosure sale.

On July 30, 2014, the Honorable James C. Mahan, U.S. District Judge, granted summary judgment in Branch Banking & Trust's favor on all issues, except the fair market value of the property at the time of the foreclosure sale. *See generally* (Doc. #50).

On August 21, 2014, the court granted the parties' joint motion for a settlement conference and stayed the action under October 6, 2014. *See* (Doc. #52). No settlement was reached and litigation resumed on the one remaining issue: the fair market value of the property at the time of the foreclosure sale. Branch Banking & Trust contends that the property's fair market value at the time of the sale was $2,760,000.00. (Doc. #61 at 2:19).

On July 28, 2015, the court held a deficiency hearing to determine the fair market value of the property at the time of the foreclosure sale. (Mins. Proceedings #76). During the court's hearing, Pahrump 194 moved to exclude Branch Banking & Trust Company's expert report. *See* (*id*.) The court granted

Pahrump 194 leave to file a motion to exclude, which it did. *See* (Doc. #89). This report and recommendation follows.

## II. DISCUSSION

The parties' filings present two question: (1) whether the court should exclude Branch Banking & Trust Company's expert report under Federal Rule of Evidence 702 and (2) what the fair market value of the property was at the time of the foreclosure sale. Both questions are addressed below.

**A.**     **Whether Branch Banking & Trust Company's Expert Report should be Excluded?**

The first issue presented by the parties' dispute is whether Branch Banking & Trust Company's expert report should be excluded under Federal Rule of Evidence 702. Pahrump 194 argues that the report should be excluded because it did not include an assessment of the property's water right. In response, Branch Banking & Trust Company argues that exclusion is unnecessary because its expert stipulated to Pahrump 194's valuation of the water rights during the deficiency hearing.

   **1.**     *Legal Standard*

An expert witness may testify at trial if the expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. A witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148–49 (1999).

Expert testimony is liberally admitted under the Federal Rules. In *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, the Supreme Court stated that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." 509 U.S. 579,

588 (1993). The Advisory Committee Notes to Rule 702 similarly state that "rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702, Advisory Comm. Notes (2000).

**2.** *Analysis*

Pahrump 194 contends that Branch Banking & Trust Company's expert report should be excluded for one reason: the expert failed to account for the property's water rights. The court disagrees for four reasons.

First, Rule 702 merely requires that an expert's testimony "is based on **sufficient** facts or data." FED. R. EVID. 702(b) (emphasis added). Nonetheless, Pahrump 194 argues that Branch Banking & Trust Company's expert report should be excluded because it "was not based on **complete** information." (Doc. #89 at 4:11) (emphasis added). Rule 702 does not require an expert's opinion to be based on the complete universe of information to be admissible. *See* FED. R. EVID. 702(b).

Second, Branch Banking & Trust Company's expert testified that Pahrump 194's expert accurately assessed the value of the water rights at $1,355,000. *See* (Mins. Proceedings #76). This was appropriate; one expert may rely on the opinion of another expert when testifying. *See* FED. R. EVID. 703. ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."); *Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 101 n.10 (3d Cir. 1982) ("Under Rule 703, an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts."); *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833, 844 (3d Cir. 1981) (stating that Rule *703* permits accident-reconstruction expert to base opinion on facts, data and conclusions expressed by medical doctor).

Third, neither expert testified that the value of the water rights could not be determined apart from the other aspects of the property. Pahrump 194's own expert assessed the value of the water rights independently from the property as a whole. *See* (Doc. #62 at 6:12–14). Similarly, Branch Banking &

Trust Company's expert offered testimony regarding the value of the water rights that was independent from his assessment of the rest of the property's value.

Fourth, exclusion would be unduly prejudicial because the failure to account for the water rights would not alter the expert's opinion of the rest of the property. Therefore, Pahrump 194's Motion to Exclude (#89) is denied.

**B.**     **What was the Fair Market Value of Pahrump 194 at the time of the Foreclosure Sale?**

The court now turns to the second question presented by the parties' filings: what the fair market value of the property was at the time of the foreclosure sale? The court's analysis begins with the governing law.

### 1.     *Legal Standard*

Nevada law defines fair market value "as the price which a purchaser, willing but not obliged to buy, would pay an owner willing but not obliged to sell, taking into consideration all the uses to which the property is adapted and might in reason be applied. *Unruh v. Streight*, 96 Nev. 684, 615 P.2d 247, 249 (1980). In the context of a foreclosure sale, however, the sale price is not necessarily an indication of a property's fair market value. *See Halfon v. Title Ins. & Trust Co.*, 97 Nev. 421, 634 P.2d 660, 661 (1981). In those cases, fair market value is determined by the court. *Branch Banking & Trust Co. v. Smoke Ranch Dev., LLC*, 92 F. Supp. 3d 998, 1001 (D. Nev. 2015).

Nevada Revised Statute § 40.457 governs the procedure for determining fair market value. It states that "before awarding a deficiency judgment . . . , the court shall hold a hearing and shall take evidence presented by either party concerning the fair market value of the property sold as the date of foreclosure sale or trustee's sale." NEV. REV. STAT. § 40.457(1). An evidentiary hearing is mandatory. *Branch Banking & Trust Co. v. Pebble Creek Plaza, LLC*, 46 F. Supp. 3d 1061, 1076 (D. Nev. 2014) ("In no unclear terms,

NRS § 40.457(1) *requires* the Court to hold a hearing and consider all relevant evidence in determining the fair market value of the property.") (emphasis original).

At the hearing, the court may "consider all relevant evidence in determining the value of the property." *Unruh*, 615 P.2d at 249; *Tahoe Highlander v. Westside Fed. Sav.*, 95 Nev. 8, 588 P.2d 1022, 1024 (1979). Additionally, "[u]pon application of any party made at least 10 days before the date set for the hearing the court shall, or upon its own motion the court may, appoint an appraiser to appraise the property sold as of the date of foreclosure sale or trustee's sale." NEV. REV. STAT. § 40.457(2). To support a calculation of fair market value, a party must provide evidence "which a reasonable mind might accept as adequate to support [its] conclusion." *State Emp't Sec. Dep't v. Hilton Hotels Corp.*, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986).

**2.    *Analysis***

In 2012, the property consisted of six adjacent parcels in Pahrump, Nevada, totaling 190.20 gross and 184.24 net acres. The property was zoned for general commercial use and was generally undeveloped; a pump-station building and power generator owned by Utilities Inc. of Central Nevada sat on one parcel.

Branch Banking & Trust contends that the property's fair market value was $2,760,000.00 without the water rights and $4,115,000.00 including the water rights. Its assessment is based on three considerations. First, Branch Banking & Trust's expert, Mr. DiFederico, concluded that the property's highest and best use "was to hold for future development" because development "would not have a value commensurate with its cost." Second, Mr. DiFederico reasoned that selling the property in bulk would have provided the best return based on a variety of assumptions regarding transaction costs, which could have been incurred had the parcels been sold individually.[2] Third, assuming a bulk sale, Mr. DiFederico

---

[2] If sold individually, Mr. DiFederico opines that the parcel's total fair market value would have been $4,090,000.00 before transaction costs are incurred.

identified three property transactions in Pahrump and two in Clark County from 2010, 2011, and 2012 that allegedly indicate that the property's fair market value was $2,760,000.00, not including the water rights.[3]

In response, Pahrump 194 and its guarantors assert that the property's fair market value was $7,620,000.00 for four reasons. First, Pahrump 194's expert, Mr. Smith, completed a report on August 4, 2012, which was less than six months after the foreclosure sale and, therefore, provides "a more accurate retroactive estimation of the value of the property." Second, Mr. Smith relied on comparable parcels of land that were located in Pahrump, not Clark County, and zoned for exclusively for commercial use, not residential use. Third, Mr. Smith's valuation accounted for the property's 271 acre feet of water rights. Fourth, Mr. Smith's valuation accounted for the Branch Banking & Trust's failure to mitigate its damages.

Having reviewed the parties' evidence and consider the arguments presented in their papers and at the deficiency hearing, the court recommends finding that the fair market value of the property was $5,867,500.00. This amount is approximately the midpoint between each expert's valuation, including water rights. The court's recommendation is based on "all the relevant of evidence," *see Tahoe Highlander*, 95 Nev. at 8, 588 P.2d at 1024, and the fact that both parties presented conflicting evidence and alternative theories of valuation. All the evidence presented by Pahrump 194's expert, Mr. Smith, militates in finding a relatively high fair market value. All the evidence presented by Branch Banking & Trust's expert, Mr. DiFederico, militates in finding a much lower fair market value. Both experts credibly testifying during the court's hearing and both prepared equally persuasive reports. This created a

---

[3] Three of the five comparables relied upon by Mr. DiFederico involved bank-owned properties. Two were zoned for residential use. As discussed above, Mr. DiFederico stipulated at the deficiency hearing that the property's water rights should be valued at $1,355,000.00.

stalemate, requiring the court to find that the fair market value of the property at the time of the foreclosure sale is $5,867,500.00 the value "all the relevant of evidence" shows. *Id.*

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Pahrump 194's Motion to Exclude (#89) is DENIED.

IT IS RECOMMENDED that the value of the property at the time of the foreclosure sale be set at $5,867,500.00.

DATED this 15th day of December, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE